[No. 12503.  Department Two.  May 29, 1915.]

NELLIE S. GRAY, *Administratrix*, *Appellant*, v. LEOPOLD M. STERN, *Respondent*.[1]

ATTORNEY AND CLIENT—PARTNERSHIP—CONTRACT FOR DISSOLUTION —ACCOUNTING—FEES. Where a contract dissolving a law partnership and arranging a division of the business on hand, and of the fees and commissions thereafter arising from such business, enumerated certain business, including among others, a specified case in which the compensation was to be a percentage of the recovery, and provided that the fees and allowances arising therefrom, except commissions on collections, shall be divided in certain proportions, must be construed as intending that in the specified case the compensation was regarded as "fees" for division, and not as "commissions" which by the contract were reserved to one of the partners as his own "fees," the element of contingency in the fee not rendering it subject to classification as a "commission."

ATTORNEY AND CLIENT—PARTNERSHIP—CONTRACT OF DISSOLUTION —PERFORMANCE. Under a contract of dissolution of partnership in the law business, wherein the retiring partner was to complete certain business in the circuit court of appeals at his own expense, in order to be entitled to an agreed share of compensation, the fact that·such retiring partner was put to no further expense in the matter, and did no other work in the case, after writing the brief thereon, than make an arrangement for another attorney to argue the cause in the circuit court of appeals, would not deprive him or his estate of his share of compensation.

ATTORNEY AND CLIENT—PARTNERSHIP—CONTRACT OF DISSOLUTION— PERFORMANCE. In such a case, the fact that the brief was originally written during the existence of the partnership, would not make it the property of the continuing partner on the dissolution, so as to make its use, subsequent to the death of the retiring partner, the contribution of the continuing partner to work necessary in the cause.

ATTORNEY AND CLIENT—PARTNERSHIP—DISSOLUTION—ACCOUNTING —INDIVIDUAL PROFIT. The continuing partner who, under a dissolution contract, was to account to the retiring partner for a proportionate part of the fees on certain business, would not be required to divide the profit on buying the client's claim at a discount.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered July 11, 1914, upon grant-

[1]Reported in 149 Pac. 26.

ing a nonsuit, dismissing an action for an accounting. Reversed.

*Van Dyke & Thomas*, for appellant.

*Edward Judd*, for respondent.

ELLIS, J.—This is an action for an accounting for moneys received by the defendant from certain clients of the former law firm of Gray & Stern, which moneys the plaintiff claims should be classified as "fees and allowances" under the contract dissolving that firm.

The plaintiff is the duly appointed and qualified administratrix of the estate of John G. Gray, who died intestate on May 31, 1908. On August 25, 1905, the plaintiff's intestate, John G. Gray, and the defendant, Leopold M. Stern, formed a partnership for conducting a general law and collection business.

On September 27, 1907, this partnership, by mutual agreement in writing, was dissolved. The parts of the dissolution agreement here material read as follows:.

"For and in consideration of the sum of $1,095.20 this day paid by the said Leopold M. Stern to the said John G. Gray, the said John G. Gray bargains, sells and conveys unto the said Leopold M. Stern all his right, title, claim and interest of, in and to all business of said firm now pending or in any manner arising, except certain business hereinafter specifically itemized and set forth, it being the intent that the said Leopold M. Stern shall receive the emoluments and profits from all business now or hereafter received, except that which is expressly excluded by this contract.

"It is expressly stipulated that all mail addressed to the said firm of Gray & Stern shall be delivered by the postal authorities to the said Leopold M. Stern, and that all matters coming over the various law lists hereinafter designated as belonging to the said John G. Gray shall be delivered by the said Stern to the said Gray for attention, and the said Gray shall receive the profits therefrom for his own use and profit. That all other business arising through said mail shall belong to the said Leopold M. Stern without any claim

of the said John G. Gray to any interest of, in and to the same.

"The said John G. Gray does hereby bargain, sell and convey to the said Leopold M. Stern all of the firm furniture, fixtures, carpets, stationery and other utensils acquired during the existence of said copartnership, together with all indebtedness whether evidenced by book accounts or notes, and all fees earned and to be earned in the business of said copartnership, and does hereby sell, assign, transfer and set over all his interest in that certain lease to Rooms 701 to 705 inclusive, Lowman Building, Seattle, Washington, together with all moneys on deposit in the Puget Sound National Bank to the credit of said firm, it being the intent of this instrument that all of the assets of said firm whether represented by cash, bank deposit, book accounts or indebtedness shall become the property of the said Leopold M. Stern.

"It is hereby agreed that the said John G. Gray shall at his own expense complete the following unfinished business: The Puget Sound Engine Works case, now in the Circuit Court of Appeals.

"Certain bankruptcy matters as follows: Frank Subarber; O. E. Hyggen; Lynden Mercantile Co.; H. Cohl; D. Offutt & Co.; L. Verstandig & Jacobs; Thurber.

"Certain receivership matters as follows: Central Alaska Co.; Holden Furniture Co.; Alki Point Transportation Co.

"Certain other litigation as follows: Van Schuyver & Co. v. Macauley; Adair v. Cymru Copper Co.; Sarah Kinder matter.

"That the said Leopold M. Stern shall be reimbursed for all costs advanced by the copartnership in all matters and the said John G. Gray shall be reimbursed for any cash disbursements made by him on account of said matters hereinafter. That the fees and allowances arising therefrom, except commissions on collections, shall be divided in manner as follows: Leopold M. Stern, two-thirds; John G. Gray, one-third.

"The following litigated matters designated as the McCarthy Dry Goods Co. matter and the Wilson Bros. v. Alaska Mercantile Co. matter are to be handled by the said John G. Gray and the said Leopold M. Stern jointly, and whatever revenue or fees arising therefrom, except commissions on

claims of creditors, shall be divided as follows: Leopold M. Stern, two-thirds; John G. Gray, one-third.

"Provided that if the claim of Mills & Gibb as creditors can be charged with any fee the said John G. Gray shall have his one-third thereof and the said Leopold M. Stern his two-thirds.

"That in the bankruptcy and receivership matters handled by the said John G. Gray and in the matters handled jointly by the said John G. Gray and the said Leopold M. Stern, the proceeds of all collections on claims of creditors shall be delivered to the said Leopold M. Stern for remittance, with right to him to charge such fees as he may deem proper in premises and to keep and retain said fees as his own."

In the complaint it is averred, in substance, that the firm of Gray & Stern represented about fourteen claimants in the litigation designated in the agreement as the Puget Sound Engine Works case; that, as the plaintiff is informed and believes, her intestate performed all services necessary to be performed in that case prior to his death; that the defendant has collected, as fees and allowances in that case, a large sum of money, for which he refuses to account.

The defendant, by answer, admits that the firm of Gray & Stern represented about fourteen claimants in the Puget Sound Engine Works case, and denies the other averments above mentioned. The answer also sets out certain matters as affirmative defenses which are traversed by the reply. With these we are not here concerned.

The Puget Sound Engine Works case involved the prosecution against a surety company, as surety upon the contractor's bond, of a large number of claims for material and labor furnished to the contractor for the construction of a Federal public work. Fifteen of these claims were represented by the firm of Gray & Stern. The others were represented, respectively, by several different attorneys and legal firms. The cause was tried in the lower Federal court and all of these claims were allowed. The surety company appealed to the United States circuit court of appeals for the ninth

circuit. The decedent, Gray, wrote the brief on behalf of the claims represented by Gray & Stern in the court of appeals prior to the dissolution of the partnership. It seems to be conceded that this brief presented the whole case of all the claimants and was adopted by those represented by other attorneys. By agreement between Gray and the other attorneys, the case was argued in the circuit court of appeals by H. T. Granger, the attorney who represented the largest of all the claims. The cause was argued in the circuit court of appeals in the spring of 1908, after the dissolution of the partnership of Gray & Stern, but before Gray's death. The decision of the lower court was affirmed by the court of appeals about ten days after Gray's death. The surety company appealed the case to the supreme court of the United States. Granger, by tacit consent of all the attorneys representing the claimants, took charge of the case in the supreme court, using a reprint of the brief prepared by Gray for the court of appeals, with only such formal changes as were necessitated by the difference in forum. Granger testified that he attended to this reprinting, the filing of the brief in the supreme court, sent the briefs himself, and conducted all of the correspondence with the clerk of the supreme court necessary to a submission of the case, which was presented on briefs without argument; that he received no assistance from Stern in connection with the case, except that when he, Granger, assessed all of the claimants in proportion to their claims to pay the expenses, Stern sent him the proportion assessed to the claimants originally represented by Gray & Stern. The decision of the court of appeals was finally affirmed by the supreme court. Stern, who was called as a witness for the plaintiff, testified that all of these claimants save one paid these assessments. That one claimant, Meacham & Pinard, while the case was pending in the United States supreme court, sold its claim at a discount to Stern, who, on the affirmation of the judgments in favor of the claimants by the supreme court, realized a profit of $260 on this claim.

Stern further testified that all of the claims were originally taken by the firm of Gray & Stern on a contingent "commission" of ten per cent of the amount collected, but that when the matter was wound up he made an effort to get a larger "commission" because of the time and labor involved and that some of the claimants allowed as much as twenty per cent, some fifteen per cent, and others stuck for the original percentage of ten; that he finally collected and retained as compensation specific amounts on each of these claims, which amounts aggregate $1,213.76. This includes the $260 profit made on his personal purchase of the Meacham & Pinard claim.

At the close of the plaintiff's evidence, the defendant moved for a dismissal on the ground that the evidence was insufficient to sustain a judgment against the defendant. The motion was granted. From the judgment of dismissal and for costs, the plaintiff appeals.

Two questions are presented: (1) Under the contract of dissolution, should the compensation collected by the respondent in the Puget Sound Engine Works case be treated as "fees and allowances" and therefore subject to a division, two-thirds to respondent and one-third to the appellant, or as "commissions on collections" in which the appellant would have no interest? (2) Assuming the former, did the plaintiff's intestate perform his part of the contract of dissolution so as to entitle his estate to one-third of this compensation?

I. The first question must be solved by a construction of the contract in the light of its terms and subject-matter. We do not regard the contract as ambiguous. Taking the literal and usual meaning of the words "fees" and "commissions," it seems to us that the compensation of the attorneys for conducting litigation through several courts, as was the case in the Puget Sound Engine Works litigation, falls under the former rather than the latter. It is admitted that the compensation was to be determined by a percentage of the amount

recovered and was contingent on the recovery. A "contingent fee" is defined in Black's Law Dictionary as follows:

"A fee stipulated to be paid to an attorney for his services in conducting a suit or other forensic proceeding only in case he wins it; it may be a percentage of the amount recovered."

A more exact definition or description of the compensation received in the litigation here in question could hardly be framed. The same work defines the word "commission," as used in commercial law, as follows:

"The recompense or reward of an agent, factor, broker, or bailee, when the same is calculated as a percentage on the amount of his transactions or on the profit to the principal. But in this sense the word occurs more frequently in the plural."

It requires a most strained construction to fit this definition to the case here. Even regarding the attorney as the legal agent of the client, as in a sense he is, in the mere collection of accounts or claims due to the client, the compensation for such collection could hardly be classed as "commissions" under this definition, where the collection was only made after long and tedious litigation in the courts, not only to secure the money, but also to establish the claims. This is especially true since the dissolution contract clearly covers business of both kinds, that is, mere collections and contested litigation, and the words "commissions on collections," reasonably though loosely applicable to compensation for the one, and the word "fees," strictly and commonly applicable to compensation for the other, are both used in the contract.

There is nothing in the connection in which these words are used to indicate that they are to have any other than their usual and ordinary meaning as applied to the Puget Sound Engine Works case. On the contrary, that case seems to be intentionally excluded from the enumeration of matters to which the term commissions is applied. The contract first states that fees and allowances, arising from the Engine Works case, certain specified "receivership matters," and cer-

tain specified "other litigation," except commissions on collections, shall be divided, two-thirds to Stern, one-third to Gray. Then follows a provision touching two litigated matters, not included in those above specified, nor either of them the Engine Works case, in which two matters all revenue or fees, "except commissions on claims of creditors," shall be divided in the same way, and a further provision that in the bankruptcy and receivership matters, proceeds of all collections on claims of creditors shall be delivered to Stern for remittance, with the right to him to charge such "fees" as he may deem proper and keep and retain such "fees" as his own. Since the Puget Sound Engine Works case is not included in the two litigated matters last referred to, and since it was not a bankruptcy matter, but a suit on a bond, it is clear that the parties have, by the process of exclusion, designated all compensation in that case as "fees and allowances" to be divided one-third to Gray, two-thirds to Stern. The contract, taken as a whole, is capable of no other construction.

II. The contract provides that Gray, the intestate, should, at his own expense, complete the following unfinished business: "The Puget Sound Engine Works case now in the circuit court of appeals," and certain other matters not here material. So far as the record now shows, he had, prior to his death, completed all the arrangements which, as the result proved, were necessary to a successful completion of that case. He made the arrangement with Granger to argue the case in the court of appeals, and the brief which he wrote was by Granger, not Stern, modified to fit the new forum and reprinted for use in the supreme court of the United States. There is no merit in the argument that because this brief was originally written during the existence of the partnership, it became Stern's property on the dissolution, and its use was his contribution to the work necessary after Gray's death. Had Gray lived and done exactly what Granger did, no one could have claimed that he had not done all that was necessary to complete the case. There was no other work

to be done in the matter and there were no expenses to be paid except such as were paid, and in any event would have been paid by the claimants.   The fact that Gray personally did nothing in the matter after writing the brief and arranging with Granger to argue the case, and by reason of that arrangement would have been at no further expense in the matter, is hardly a reason why his estate should be deprived of his agreed share of the compensation.   Nor does the fact that the brief was written and these arrangements made prior to the dissolution of the partnership alter the case.   Both parties must be presumed to have known that there might be or might not be other work to be performed and other expenses to be paid.   Since neither additional work nor expense was required, we can see neither reason nor justice in allowing the respondent to reap all of the benefit from a condition to which he did not contribute.

One other thing remains to be noted. The respondent in any event should not be required to account for more than a ten per cent fee on the amount recovered in the claim of Meacham & Pinard.   The judgment on that claim was $606.43.   The respondent bought the claim at a discount after the dissolution of the partnership.   The speculation was a personal one. He is entitled to the profits but he took the claim subject to the agreement in the dissolution contract to account for the fee.   The entire revenue derived from the other claims should be regarded as fees and allowances under the contract.   We are clear that the evidence was sufficient to put the respondent to his defenses, and that the challenge to the appellant's evidence was improperly sustained.

Reversed and remanded for trial.

Morris, C. J., Fullerton, Main, and Crow, JJ., concur.